# Exhibit D

2026 WL 1021213
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Richard Agag, MD, Plaintiff,

v.

Cigna Health and Life
Insurance Company, Defendant.

No. 3:25-cv-00498 (SRU)
|
Filed 04/15/2026

**Attorneys and Law Firms**

Clifford Alexander Merin, Merin Law, LLC, New Haven, CT, James Greenspan, Gottlieb and Greenspan, LLC, Fair Lawn, NJ, for Plaintiff Richard Agag, MD.

Caroline E. Oks, Ryan Patrick Goodwin, Pro Hac Vice, FBT Gibbons LLP, Newark, NJ, Stephen R. Donat, FBT Gibbons LLP, New York, NY, for Defendant Cigna Health and Life Insurance Company.

**ORDER ON MOTION TO DISMISS AND CROSS-MOTION TO CONFIRM**

Stefan R. Underhill United States District Judge

**\*1** The plaintiff, Richard Agag, is a physician specializing in plastic and reconstructive surgery. He alleges that he has not been reimbursed by the defendant, Cigna Health and Life Insurance Company ("Cigna"), for out-of-network services he provided to two patients who were insured by Cigna. He seeks an order confirming various awards in his favor that resulted from the independent dispute resolution ("IDR") process outlined in the No Surprises Act ("NSA"). In response, Cigna moves to dismiss his complaint on the grounds that Agag does not have a private right of action to seek confirmation of those awards in federal court and that I do not have subject matter jurisdiction to decide this case.

My decision represents the third time that a judge in the District of Connecticut has weighed in on whether a health care provider may seek confirmation in federal court of an NSA IDR award when a health insurance company refuses to pay that award. The first concluded that the NSA provides

an implied private right of action for providers to seek confirmation in federal court. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025). The second concluded that it lacked subject matter jurisdiction over the case because neither the Federal Arbitration Act ("FAA") nor the NSA provides any basis for a provider to seek confirmation in federal court. *See Axis Neuromonitoring, LLC v. Aetna Inc.*, 2026 WL 795260 (D. Conn. Mar. 20, 2026). In doing so, it largely agreed with the Fifth Circuit, the only appellate court so far to rule on the issues presented in this case. *See Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271 (5th Cir. 2025). Today, I reach a third conclusion: that I have federal question jurisdiction under the NSA, and that a provider may seek confirmation of an IDR award in federal court under the NSA, but not the FAA, because the requested relief can be provided through a summary proceeding that does not involve a traditional private right of action or judicial review.

For the following reasons, Cigna's Motion to Dismiss, Doc. No. 25, is **GRANTED** with regard to Agag's request to confirm the IDR award under the FAA and his request for damages under the NSA, but **DENIED** otherwise. Agag's Cross-Motion to Confirm, Doc. No. 33, is **GRANTED**.

**I. Background**

**A. The No Surprises Act**

The No Surprises Act ("NSA") protects medical patients from "surprise medical bills" that may arise when a patient receives emergency medical care from an out-of-network health care provider or non-emergency medical care from an out-of-network provider at an in-network health care facility. 42 U.S.C. § 300gg-111, et seq. The NSA does so by prohibiting out-of-network providers from holding patients liable for more than a patient's in-network cost-sharing responsibility. *Id*. §§ 300gg-131, -132. If a provider bills a patient an amount greater than their in-network cost-sharing responsibility, the provider must "reimburse the enrollee for the full amount paid by the enrollee in excess of the in-network cost-sharing amount for the treatment or services involved, plus interest, at an interest rate determined by the Secretary [of Health and Human Services]." *Id*. § 300gg-139(b).

**\*2** A physician seeking reimbursement for costs in excess of the in-network cost-sharing amount paid by the patient

must submit a claim directly to the patient's health insurance plan. *Id*. §§ 300gg-111(b)(1)(C)-(D). The health insurance company administering that plan then has 30 days either to render an initial payment or to issue a notice of claim denial. *Id*. § 300gg-111(a)(1)(C)(iv)(I). If an out-of-network provider disagrees with the payment amount or the denial of the claim, the provider may, during the 30-day period beginning on the day the provider receives an initial payment or claim denial, initiate "open negotiations" with the health insurance company to determine the appropriate reimbursement amount. *Id*. § 300gg-111(c)(1).

### i. The IDR Process

If open negotiations do not conclude in an agreement between the provider and the health insurance company, either side "may, during the 4-day period beginning on the day after such open negotiation period, initiate the independent dispute resolution process" laid out under the NSA. *Id*. § 300gg-111(c)(1)(B). The IDR entity selected for the dispute must, within 30 days of being selected, choose between the two payment-amount offers individually submitted by the provider and the health insurance company. *Id*. § 300gg-111(c)(5)(A). After the IDR entity determines the appropriate award, a health insurance company must pay the award "directly to the [provider] not later than 30 days after the date on which such determination is made." *Id*. § 300gg-111(c)(6).

In deciding which offer to select, an IDR entity must consider a variety of factors. *See id*. § 300gg-111(c)(5)(C). Among those factors is the "qualifying payment amount," which generally refers to "the median of the contracted rates recognized by the [health insurance] plan or issuer ... for the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished[.]" *Id*. § 300gg-111(a)(3)(E)(i)(I). The IDR entity uses that calculation when it assesses which offer to select during the IDR process, meaning that the "qualifying payment amount" may differ from the payment determination ultimately made by the IDR entity. *See id*. § 300gg-111(c)(7) (A)(v) (suggesting that "the payment amount determined (or agreed to)" may "exceed[ ] the qualifying payment amount"). Indeed, a health insurance company does not necessarily need to submit the "qualifying payment amount" calculation as its offer during the IDR process. *See id*. § 300gg-111(c)(7) (B)(iii) (noting that "the amount of the offer submitted ...

by the group health plan or health insurance issuer" may be "a percentage of the qualifying payment amount"). Put differently, the qualifying payment amount is the amount a health insurance company reasonably *should* pay when an out-of-network provider makes a claim for services covered by the NSA.

The NSA states that the IDR entity's determination:

(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and

(II) shall not be subject to judicial review, except in a case described in any of the paragraphs (1) though (4) of section 10(a) of title 9.

*Id*. § 300gg-111(c)(5)(E)(i). Section 300gg-111(c)(5)(E)(i) (II) of the NSA references 9 U.S.C. § 10(a), which is part of the FAA. The FAA governs arbitration agreements and the arbitral process. *See* 9 U.S.C. § 1, et seq. An arbitration agreement is generally defined under the FAA as "[a] written **provision** ... to settle by arbitration" a dispute that arises between the parties. *Id*. § 2. The FAA deems written arbitration agreements to be valid unless certain exceptions apply. *See id*. The FAA also authorizes federal courts to enter an arbitration award into judgment when "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration." *Id*. § 9. A federal court, however, is not required to confirm an arbitration award and enter judgment. A court may, under Section 10(a), vacate an arbitration award under the following circumstances:

**\*3** (1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id*. § 10(a).

### ii. Administrative Framework

The NSA empowers the Secretary of Health and Human Services, the Secretary of Labor, and the Secretary of the Treasury to oversee much of the independent dispute resolution ("IDR") process. 42 U.S.C. § 300gg-111(c)(2)(A). For instance, the NSA instructs those three Secretaries to "establish a process to certify" IDR entities that will mediate the process. *Id*. § 300gg-111(c)(4)(A). Parties that engage in the IDR process may either select their own IDR entity or have the Department of Health and Human Services ("HHS") appoint an IDR entity. *Id*. § 300gg-111(c)(4)(F).

If the health insurance company fails to pay the IDR award to the provider within 30 days of the IDR entity's determination, the NSA authorizes HHS to impose civil monetary penalties on the company. *Id*. § 300gg-22(b)(2)(C). A health insurance company that disputes the civil monetary penalty may seek a hearing before HHS, *id*. § 300gg-22(2)(D), and—after that administrative hearing—a review of the penalty by a federal district court. *Id*. § 300gg-22(b)(2)(E)(i). If a health insurance company does not request a hearing before the HHS, the civil monetary penalty "shall constitute a final and unappealable order." *Id*. § 300gg-22(2)(D)(i). When a health insurance company still does not pay the penalty "after it has become a final and unappealable order, or after [a federal district court] has entered final judgment in favor of [HHS]," HHS "shall" refer the matter to the Attorney General, who "shall recover" the penalty "in the appropriate United States District court." *Id*. § 300gg-22(b)(2)(F)(i).

In addition, the NSA instructs HHS to establish several rules. For instance, it orders HHS to create an audit process to ensure that health insurance companies "are in compliance with the requirement of applying a qualifying payment amount" under the NSA. *Id*. § 300gg-111(a)(2)(A)(i). That process is intended to ensure that health insurance companies are using the qualifying payment amount calculation when they process claims made under the NSA. It does not address whether those amounts are actually paid out to providers.

The NSA also requires HHS to establish "a process to receive complaints of violations" of the statute. *Id*. § 300gg-111(a)(2)(B)(iv); *see also id*. § 300gg-134(b)(3) (instructing HHS to "establish a process to receive consumer complaints of violations ... and provide a response to such complaints within 60 days of receipt of such complaints"). Accordingly, HHS has set up a "No **Surprises** Help Desk" that is administered, at least in part, by the Center for Medicare and Medicaid Services ("CMS"). *See No **Surprises** Act: How to Get Help and File a Complaint*, Center for Medicare and Medicaid Services (Aug. 2023), https://www.cms.gov/files/document/nsa-helpdesk.pdf. Providers who wish to report a violation of the NSA may contact the No **Surprises** Help Desk by phone or submit an online complaint. *See Providers: submit a billing complaint*, Center for Medicare and Medicaid Services (Feb. 4, 2026), https://www.cms.gov/nosurprises/policies-and-resources/providers-submit-a-billing-complaint. The NSA does not prescribe what steps CMS takes to resolve a complaint submitted through the No **Surprises** Help Desk.

### B. Factual Background

**\*4** Agag is a physician who specializes in plastic and reconstructive surgery. Compl., Doc. No. 1, ¶ 5. He does not have a network contract with Cigna and is therefore an out-of-network provider for patients who are the beneficiaries of health plans issued by or administered by Cigna. *Id*. ¶ 7. That includes the two patients relevant to this action. *Id*. ¶ 6. The services rendered by Agag to the two patients in this case were done so "emergently/inadvertently." *Id*. ¶ 8.

On January 7, 2022, Agag performed surgery for Patient M.P. at Saint Mary's Hospital in Waterbury, Connecticut. *Id*. ¶ 24. Following Patient M.P.'s treatment, Agag submitted four claims to Cigna: two for $9,226.40 each, one for $7,700.00, and one for $31,752.40. *Id*. ¶¶ 25, 35, 45, 55. Cigna effectively denied all those claims. *Id*. ¶¶ 26, 36, 46, 56 (noting for all four claims that "Defendant allowed payment to Plaintiff in the amount of $0.00"). Agag disputed Cigna's payment determination and initiated open negotiations, which did not resolve the two parties' payment dispute. *Id*. ¶¶ 27, 37, 47, 57. Consequently, Agag initiated the IDR process. *Id*. ¶¶ 28, 38, 48, 58.

On December 19, 2024, ProPeer Resources, LLC—the certified IDR entity assigned to evaluate those claims—ruled in Agag's favor on all four claims, awarding $5,535.84 each for the first two claims, $7,700.00 for the third claim, and $26,296.31 for the fourth claim. *Id*. ¶¶ 30 (describing Arbitration Dispute DISP-2001877), 40 (DISP-2001876), 50 (DISP-2001874), 60 (DISP-2001871). Cigna failed to pay any of those payment amounts within 30 days of the awards. *Id*. ¶¶ 32, 42, 52, 62. Agag claims that he still has not received payment for any of those awards. *Id*. ¶¶ 33, 43, 53, 63.

On April 14, 2023, Agag performed surgery on Patient M.L. at Backus Hospital in Norwich, Connecticut. *Id*. ¶ 13. Following the surgery, Agag submitted a claim to Cigna seeking $196,000.00 in payment. *Id*. ¶ 14. Cigna responded by effectively denying the claim. *Id*. ¶ 15 ("Defendant allowed payment to Plaintiff in the amount of $0.00."). Agag subsequently initiated an open negotiation period, which did not resolve the two parties' payment dispute. *Id*. ¶¶ 16-17. He then initiated the IDR process. *Id*. ¶ 17. On March 6, 2024, Federal Hearings and Appeals Services, Inc.—the certified IDR entity assigned to decide that dispute—ruled in Agag's favor and awarded $97,500.00 to Agag under Arbitration Dispute DISP-878778. *Id*. ¶ 19. Cigna did not pay that payment amount within 30 days. *Id*. ¶ 21. Agag claims that he has still not received the $97,500.00 owed to him. *Id*. ¶ 23.

Combined, the five IDR awards mean that Cigna owes Agag a total of $142,567.99.

### C. Procedural History

On March 27, 2025, Agag filed his complaint against Cigna. *See id*. In Count One, Agag requests an order confirming, under Section 9 of the FAA, the five IDR awards described above. *Id*. ¶¶ 66-71. In Count Two, Agag alleges that Cigna, by not paying him those awards, has violated the NSA and caused him $142,567.99 in damages. *Id*. ¶¶ 72-79. Agag's complaint requests an order confirming the five IDR awards described above, as well as an order directing Cigna to pay the combined $142,567.99 owed to him under those IDR awards. *Id*. at 11.

Cigna responded to Agag's Complaint by filing a motion to dismiss on September 26, 2025. *See* Def.'s Mot. to Dismiss, Doc. No. 25. Cigna makes two principal arguments in its motion. First, Cigna argues that the NSA does not provide a **private right** of **action** to seek judicial confirmation of IDR awards. Def.'s Mem. of L. in Supp. of Mot. to Dismiss Pl.'s Compl., Doc. No. 25-1, at 1-2. In doing so, Cigna asserts that I lack subject matter jurisdiction over this case and that Agag fails to state a claim upon which relief can be granted. *See id*. at 11. Secondly, Cigna argues that even if the NSA did provide a **private right** of **action** under 9 U.S.C. § 9, Agag has run out of time to request a judicial confirmation of the IDR award in Patient M.L.'s case, because 9 U.S.C. § 9 sets out a one-year time limit for confirmation of arbitration awards, and the IDR award was made on March 6, 2024, more than a year before Agag filed his complaint. *Id*. at 2.

**\*5** On November 21, 2025, Agag filed a Cross-Motion to Confirm. Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss Compl. and in Supp. of Pl.'s Cross-Mots. to Confirm and for Summ. J., Doc. No. 33. He emphasizes that under 9 U.S.C. § 9, a court must grant a petition to confirm an arbitration award unless Cigna has moved to vacate the awards, which it has not. *Id*. at 18.

### II. Motion to Dismiss Under Rule 12(b)(1)

Agag claims that I have subject matter jurisdiction because the dispute "arises under" both the FAA and the NSA. In response, Cigna argues that Section 9 of the FAA does not apply to the facts of this case and that the NSA does not provide a **private right** of **action** for Agag to bring his case in federal court. Accordingly, Cigna moves to dismiss the case under Fed. R. Civ. P. 12(b)(1).

### A. Legal Standard

"Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996). That is because "if [a court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a motion brought under Rule 12(b)(1), a plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Id*. (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

"The federal courts are 'courts of limited jurisdiction, defined (within constitutional bounds) by federal statute.' " *Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 593-94 (2d Cir. 2024) (quoting *Badgerow v. Walters*, 596 U.S. 1, 7 (2022)). "Congress has granted those courts jurisdiction over two main kinds of cases." *Badgerow*, 596 U.S. at 7 (2022). The first is when there is complete diversity of citizenship between the plaintiff and the defendant, and when the amount-in-controversy exceeds $75,000. 28 U.S.C. § 1332(a). The

second is when the plaintiff sets forth a colorable claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### B. The FAA Does Not Provide a Basis for Jurisdiction

Agag argues that I have subject matter jurisdiction under the FAA. Section 9 of the FAA, however, does not by itself establish federal question jurisdiction. *Badgerow*, 596 U.S. at 8. Instead, for a federal court to have subject matter jurisdiction over a petition to confirm an arbitration award under Section 9, there must be a "jurisdictional basis independent of the FAA" that "appear[s] on 'the face of the application itself.' " *White Oak Glob. Advisors, LLC*, 102 F.4th at 596 (quoting *Badgerow*, 596 U.S. at 9). Because the FAA cannot independently establish federal question jurisdiction and Section 9 of the FAA does not even apply to the facts of this case, *see infra* Section III(b), I conclude that the FAA cannot be a basis for federal question jurisdiction under 28 U.S.C. § 1331. *See also Axis Neuromonitoring, LLC*, 2026 WL 795260, at *4 (quoting *Badgerow*, 596 U.S. at 11).

### C. The NSA Provides a Basis for Jurisdiction

**\*6** I next turn to whether the NSA, standing alone, provides an independent basis for federal question jurisdiction. Cigna argues that a court cannot have subject matter jurisdiction to hear a case "arising under" the NSA because the NSA did not create a **private right** of **action**. I address that question in Section III(c) of this opinion. For purposes of the jurisdictional analysis, I will assume that the NSA does not create a **private right** of **action** for providers.

"Typically, an action arises under federal law if the law 'creates the cause of action asserted.' " *Badgerow*, 596 U.S. at 7-8 (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)). That does not mean, however, that a federal cause of action is required for a court to have federal question jurisdiction. *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005). Indeed, "[i]t is firmly established ... that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction ...." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

A federal court has jurisdiction "if the right of the petitioners to recover under their complaint will be sustained" under one construction of a federal law but not another, "unless the

claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id*. (cleaned up). Put differently, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " *Id*. (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

The jurisdictional inquiry under Section 1331 is therefore distinct from the right of action inquiry that Cigna focuses on. Under Section 1331, what matters is that the claim arises under federal law on the face of the well-pleaded complaint, *see generally Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908), not whether the NSA expressly entitles relief to an aggrieved party. Here, Agag alleges that Cigna violated a federal statute—the NSA—and he does so on the face of his well-pleaded complaint. That alone is enough for me to conclude that I have federal question jurisdiction to hear this dispute.

Concluding otherwise would ignore the low bar that exists for federal question jurisdiction. Federal question jurisdiction may exist even when a state-law claim, rather than a federal-law one, is at issue. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314) (explaining that a court can have subject matter jurisdiction over a state-law claim if the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"). I see no reason why a purely federal statute like the NSA—even if it may not provide a **private right** of **action**—should have less of a jurisdictional hook than some state-law claims. Hearing a dispute under the NSA does not implicate the sort of federalism concerns that a suit based exclusively on state-law claims would. In the absence of any proof that Congress wanted to insulate the NSA from any federal court involvement, I conclude that I have subject matter jurisdiction over this case. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (observing that "in exploring the outer reaches" of federal question jurisdiction, a court must make "sensitive judgments about congressional intent, judicial power, and the federal system").

**\*7** Therefore, because Agag's claim "arises under" the NSA, Cigna's Rule 12(b)(1) motion to dismiss is denied.

### III. Motion to Dismiss Under Rule 12(b)(6)

Cigna also moves to dismiss Agag's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Specifically, Cigna argues that neither the FAA[1] nor the NSA provides a **private right** of **action**, and that the NSA's text forecloses a federal court's ability to confirm an NSA award. I address each argument in turn below.

### A. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

### B. The FAA Does Not Apply Here

**\*8** Cigna argues in its Rule 12(b)(6) motion that Agag cannot seek confirmation of an NSA IDR award under the FAA. I agree that the FAA does not apply to the facts of this case. Section 9 requires that there be an "agreement" by the parties that a judgment "shall be entered upon the award made pursuant to the arbitration ...." 9 U.S.C. § 9. Agag concedes that, as an out-of-network provider, he does not have any contract with Cigna. Compl., Doc. No. 1, ¶ 7; *see Robinson v. Macy's Inc.*, 772 F. Supp. 3d 253, 260 (D. Conn. 2025) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)) (explaining that a threshold question under Section 9 is "whether the parties have indeed agreed to arbitrate"). He also fails to provide any evidence that there is "[a] written **provision**" to arbitrate that would satisfy Section 9's "agreement" requirement. *See* 9 U.S.C. § 2; *see also Mitchell F. Reiter MD PC v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3514300, at \*3 (D.N.J. Dec. 8, 2025) (observing that "confirmation of an arbitration award under § 9 requires the existence of an 'agreement' or 'contract' where parties agree to aspects of arbitration including venue, forum, and the arbitration selection process").

The parties only engaged in the IDR process because a statute authorized the IDR process as a dispute resolution mechanism. *See Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 790 F. Supp. 3d 129, 136 (E.D.N.Y. 2025) (internal citation omitted) (noting that arbitration under the FAA assumes an agreement or contract to arbitrate, and the NSA's IDR is statutorily compelled). Without a written agreement to arbitrate, I cannot enter an order confirming the award pursuant to Section 9. *See Tomczak v. Raymour and Flanigan Furniture Co.*, 2014 WL 3385164, at \*1 (W.D.N.Y. July 9, 2014) (emphasis in original) (quoting *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 210 (2d Cir. 1973)) (highlighting how Section 9 is available "*only* where the parties in their agreement have agreed that a judgment of the court shall be entered upon the award").

The fact that the NSA references 9 U.S.C. § 10(a) does not change my conclusion. The NSA states that an IDR entity's determination "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Paragraphs (1) through (4) of Section 10(a) list four circumstances where a federal court may vacate an arbitration award. The NSA conspicuously excludes the

actual text of paragraph (a) of Section 10, which refers to arbitration awards, and only incorporates paragraphs (1) through (4), which explain reasons for vacating an award. Read in conjunction with paragraphs (1) through (4) of Section 10(a), Section 300gg-111(c)(5)(E)(i)(II) of the NSA therefore forbids judicial review of an IDR award unless: (1) "the award was procured by corruption, fraud or undue means," (2) "there was evident partiality or corruption in the arbitrators," (3) "the arbitrators were guilty of misconduct" or misbehavior, or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The term "arbitrators" covers IDR entities under the NSA. *See Arbitrator, Black's Law Dictionary* (12th ed. 2024) (defining arbitrator as "[a] neutral person who resolves disputes between parties").

It is also relevant that Congress did not reference Section 9 anywhere in the text of the NSA. "It is a fundamental principle of statutory interpretation that 'absent **provision[s]** cannot be supplied by the courts.' " *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)). Without proof that Congress viewed NSA IDR awards as equivalent to written agreements to arbitrate under the FAA, Section 9 cannot be applied to this case. *Med-Trans Corp. v. Capital Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1084 (M.D. Fla. 2023)), *aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan, Inc.*, 160 F.4th 1110 (11th Cir. 2025) ("Neither the NSA nor the FAA says that the FAA bears on the NSA outside the four explicitly incorporated paragraphs. The Court will not assume otherwise.").

 **\*9** Congress had multiple reasons not to incorporate Section 9 in the NSA. As Chief Judge Shea explained, "while IDR awards under the NSA are binding once they are issued— without further action by the parties or any court—the same is not true of arbitration awards under the FAA ...." *Guardian Flight v. Aetna*, 789 F. Supp. 3d at 227. Indeed, whereas arbitration awards under the FAA "must be given force and effect by being converted to judicial orders by courts," *Key Inv. Servs., LLC v. Oliver*, 691 F. Supp. 3d 496, 502 (D. Conn. 2023) (internal citation omitted), IDR awards "are rendered in the absence of any arbitration agreement and immediately trigger the payment obligations set forth in" the NSA. *Guardian Flight v. Aetna*, 789 F. Supp. at 227. Because arbitration awards under the FAA are fundamentally different than IDR awards under the NSA, it makes sense that Congress chose purposefully to not include Section 9 of the FAA in

the NSA. *See also PHI Health, LLC v. Optimum Choice, Inc.*, 2026 WL 850453, at \*9 (D. Md. Mar. 27, 2026) (observing differences between arbitration awards under the FAA and IDR awards under the NSA).

Therefore, Section 9 of the FAA does not apply to the facts of this case, and Agag may not seek confirmation of an NSA IDR award under Section 9 of the FAA.

**C. A Private Right of Action is Not Required to Seek Confirmation of an IDR Award**

Cigna next argues that the NSA does not provide a **private right** of **action** for Agag to seek confirmation of the IDR award in federal court. District courts that have dealt with similar claims have focused almost exclusively on whether a **private right** of **action** exists under that statute, with most concluding that the NSA does not provide a **private right** of **action**. *See, e.g., East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, 2025 WL 2371537, at \*17 (S.D.N.Y. Aug. 14, 2025). But at least two district courts have concluded that the NSA does provide a **private right** of **action**. *See Guardian Flight v. Aetna*, 789 F. Supp. 3d at 227–28; *PHI Health, LLC*, 2026 WL 850453, at \*7.

That focus on the **private right** of **action** question is misplaced. A **private right** of **action** is only required when a party seeks to **enforce** *substantive* rights in federal court, or at least when the party seeks a determination of the merits of a particular claim. *See **Private Right** of **Action**, Black's Law Dictionary* (12th ed. 2024) (emphasis added) (defining "**private right** of **action**" as "[a]n individual's right to *sue* in a personal capacity to **enforce** a legal claim"). Here, Agag's motion to confirm asks me to **act** in a purely ministerial way and enter as a judgment an earlier binding determination that Cigna is obligated to pay Agag a specific sum of money for services covered under the NSA.

Although Section 9 of the FAA does not apply to the facts of this case, Agag's request is analogous to how confirmation proceedings are handled under the FAA. The Second Circuit has explained that confirmation of an arbitration award under the FAA is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court ...." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citation omitted). Accordingly, a court does not evaluate the merits of the arbitration award unless an enumerated exception applies. *See Manor House Cap.,*

*LLC v. Pritsker*, 2015 WL 273684, at \*2 (S.D.N.Y. Jan. 15, 2015) (internal citation omitted). In that way, a district court's role is sharply circumscribed. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (cleaned up) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."). I discuss the parallels between the structure of the FAA and the NSA in more detail later in this opinion, but I note here the similarities between Agag's motion and FAA confirmation hearings to highlight how courts may engage in summary **enforcement** proceedings regardless of whether a **private right** of **action** exists.

**\*10** Ultimately, Agag's Motion to Confirm is similar to a request a party might make under Section 9 of the FAA. He does not ask me to consider the merits of the IDR award or to recognize any substantive right under the NSA. All he asks me to do is to confirm earlier judgments by IDR entities that themselves considered the merits of both parties' claims.[2] The traditional right-of-action analysis therefore does not apply here, and the cases cited by Cigna are not on point because they all deal with plaintiffs asserting new substantive rights. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) (evaluating whether private plaintiffs could make disparate impact claims under Title VI of the Civil Rights **Act** of 1964); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 169-171 (2d Cir. 2014) (discussing whether a **private right** of **action** exists to sue under the Foreign Corrupt Practices **Act**).

**D. The NSA's Bar on Judicial Review Does Not Preclude Confirmation of the IDR Award**

Cigna also argues that the text of Section 300gg-111(c)(5)(E) (i)(II) of the NSA forecloses a federal court's ability to take up this case. That **provision** states that IDR awards "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). I concluded earlier that Section 300gg-111(c)(5)(E)(i)(II) forbids a court from engaging in judicial review of an IDR award unless one of the circumstances enumerated in paragraphs (1) through (4) of 9 U.S.C. § 10(a) is present during the IDR process.

A central question then is what constitutes "judicial review." Cigna proposes a broad definition of "judicial review" and argues that the statute only permits a federal court to hear "complex, fact-determinative actions to *vacate* IDR awards,"

and not actions to **enforce** IDR awards. Def.'s Mem. of L. in Supp. of Mot. to Dismiss Pl.'s Compl., Doc. No. 25-1, at 26-27 (emphasis added). The Fifth Circuit—the only appellate court so far to rule on the issue—endorsed a similar reading. *See Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th at 275.

I conclude that merely confirming an IDR award does not constitute judicial review. The Fifth Circuit notes that the term "is broad enough to include a court's order to **enforce** an IDR award" because " '[r]eview' includes '[p]lenary power *to direct and instruct an agent or subordinate*, including the right to remand, modify, or vacate any action by the agent or subordinate, or to **act** directly in place of the agent or subordinate.' " *Id*. (emphasis in original) (quoting *Review, Black's Law Dictionary* (12th ed. 2024)). The Fifth Circuit does not identify who the "agent or subordinate" being directed or instructed might be in a proceeding that merely confirms an IDR award. I also question why the Fifth Circuit looked to the dictionary definition of the term "review" when Congress specifically used the term "*judicial* review." That focus on "review" rather than "judicial review" violates the surplusage canon, which "reflect[s] an assumption applicable to 'all sensible writing: Whenever a reading arbitrarily ignores linguistic components ... the reading may be presumed improbable.' " *Feliciano v. Dep't of Trans.*, 605 U.S. 38, 51-52 (2025) (quoting Scalia & Garner, *Reading Law* 174).

**\*11** A better approach would look at the dictionary definition of the phrase that Congress used in the NSA. *See* Scalia & Garner, *Reading Law* 101 (explaining under the general-terms canon that "general words ... are to be accorded their full and fair scope. They are not to be arbitrarily limited."). That phrase—"judicial review"—can be defined in at least three ways:

> 1. A court's power to review the actions of other branches or levels of government; esp., the courts' power to invalidate legislative and executive actions as being unconstitutional.
>
> 2. The constitutional doctrine providing for this power. 3. A court's review of a lower court's or an administrative body's factual or legal findings.

*Judicial Review, Black's Law Dictionary* (12th ed. 2024). Confirming an IDR award does not implicate any of these definitions of judicial review. No action has been taken by another branch of government. No constitutional doctrine is

involved. And confirmation does not constitute review of a court or administrative body's factual or legal findings.

The Fifth Circuit cites to an ERISA case to show that the Supreme Court has used the term "judicial review" to encompass "actions that seek to confirm or **enforce** a dispute resolution award." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th at 275-76 (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 611 (1993)). But a single ERISA case that the drafters of the NSA may not have even considered does not establish how Congress defined "judicial review" in the NSA.

Instead, to understand what Congress meant in the NSA when it limited judicial review to the four circumstances laid out in Section 10(a) of the FAA, it is more helpful to look at the statute that we know Congress considered when it drafted the NSA—the FAA. Case law is clear regarding a federal court's role in a confirmation proceeding under the FAA: a court " '*must* grant' the [arbitration] award 'unless the award is vacated, modified, or corrected.' " *D.H. Blair & Co., Inc.*, 462 F.3d at 110 (emphasis added) (quoting 9 U.S.C. § 9). And "a court may change or vacate an arbitration award *only* where" a list of circumstances enumerated in Sections 10 and 11 of the FAA exist. *Tomczak,* 2014 WL 3385164, at *3 (emphasis in original) (discussing Section 9 of the FAA).

There is a clear parallel structure between the FAA and the NSA. Recall that Section 300gg-111(c)(5)(E)(i) of the NSA states that the IDR award "shall be binding upon the parties involved" and "shall not be subject to judicial review" unless one of four grounds for vacating the award is present. "Binding" means that the award has "legal force" and "require[s] obedience." *See Binding, Black's Law Dictionary* (12th ed. 2024). With that definition in mind, Section 300gg-111(c)(5)(E)(i) of the NSA essentially says that an IDR award must have legal force and that a court may only conduct judicial review, *i.e.*, consider its merits, when the award is subject to a motion to vacate. *See* Scalia & Garner, *Reading Law* 114 (explaining that, under the mandatory/ permissive canon, "when the word *shall* can reasonably be read as mandatory, it ought to be so read"). The NSA, furthermore, lays out that an award may only be vacated when paragraphs (1) through (4) of Section 10 of the FAA apply. If an IDR award requires obedience and may only be vacated if paragraphs (1) through (4) of 9 U.S.C. § 10(a) applies, it is almost identical to the framework laid out in the FAA. A court therefore must confirm the award unless a party moves to vacate it under paragraphs (1) through (4) of 9 U.S.C. § 10(a). *See D.H. Blair & Co. Inc.*, 462 F.3d at 110.

**\*12** The parallel structure between the FAA and the NSA is also helpful because Congress knew about the FAA when it constructed the NSA, and under the FAA, a court does not engage in judicial review when it confirms an award. During a confirmation proceeding under the FAA, the decision whether to confirm an arbitral award "is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). Because confirmation of an arbitral award is not intended to involve complex factual determinations, a court does not review "an administrative body's factual or legal findings" when it confirms that award. *Judicial Review, Black's Law Dictionary* (12th ed. 2024); *see also Tomczak,* 2014 WL 3385164, at *3 (quoting *Willemijn Houdstermaatschappij, BV v. Standards Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997)) (noting that a court's "review" of an arbitration award is "severely limited"). To reiterate, "[a] petition brought under the FAA is not an occasion for *de novo* review of an arbitral award, nor an occasion for the court to conduct a reassessment of the evidentiary record." *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 566 (S.D.N.Y. 2024) (cleaned up). Rather, in a confirmation proceeding, a court must enter judgment for the party seeking confirmation unless there is a motion to vacate under the FAA. *See Trustees Of the UNITE HERE Nat'l Health Fund v. JY Apparels, Inc.*, 535 F. Supp. 2d 426, 429 (S.D.N.Y. 2008).

Because I am not examining the merits of the IDR entity's determination or assessing which of the offers provided by Agag and Cigna should have been selected, I am **acting** just as I would in a FAA confirmation proceeding. In that context, as is the case here, I am not reviewing "an administrative body's factual or legal findings." I am therefore not engaged in judicial review, and the statute does not bar confirmation of the IDR awards at issue today. *See also PHI Health, LLC,* 2026 WL 850453, at *9 (concluding, based in part on how the Administrative Procedure **Act** views "judicial review," that "judicial review" means "to challenge" a decision, not to **enforce** or confirm a determination); *Reach Air Medical Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1115 (11th Cir. 2025) (suggesting that, in FAA and NSA cases, a court only engages in judicial review when it considers whether to vacate an award).

### E. The NSA's Administrative Framework Does Not Prohibit Judicial Confirmation

Finally, Cigna argues that even if the award is "binding" upon the parties, that language does not mean that a federal court can confirm it and thereby permit **enforcement** of the award. That is because, according to Cigna, the NSA lays out a comprehensive administrative scheme that allows providers like Agag to **enforce** the IDR award, and, "[t]he existence of a detailed administrative remedy is strong evidence that Congress intended it to be the exclusive remedy." Def.'s Mem. of L. in Supp. of Mot. to Dismiss Pl.'s Compl., Doc. No. 25-1, at 20-21 (citing *N.Y. Inst. of Dietetics v. Great Lakes Higher Educ. Corp.*, 1995 WL 562189, at *4 (S.D.N.Y. Sept. 21, 1995)). The Fifth Circuit adopted that view, as have district courts across the country. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th at 277; *East Coast Advanced Plastic Surgery, LLC*, 2025 WL 2371537, at *17; *Mitchell F. Reiter MD PC*, 2025 WL 3514300, at *4; *Worldwide Aircraft Servs. Inc. v. Freedom Life Ins. Co. of Am.*, 2025 WL 3551397, at *2 (M.D. Fla. Dec. 11, 2025); *Axis Neuromonitoring, LLC*, 2026 WL 795260, at *6-7.

The NSA simply does not set out a "detailed administrative remedy" for **enforcing** IDR awards. Although the NSA authorizes HHS to impose civil monetary penalties on health insurance plans that do not pay the IDR award within 30 days, those penalties are paid to the United States government, not to the provider. *See* 42 U.S.C. § 300gg-22(b)(2)(C); *see also PHI Health, LLC*, 2026 WL 850453, at *10 (commenting that the prescribed monetary penalties are only "payable to the government" and not providers). Furthermore, even if health insurance companies that face civil monetary penalties are offered an opportunity to challenge the civil monetary penalty before an administrative law judge, that hearing focuses on the legitimacy of the civil monetary penalty, not the IDR award itself. *See* 42 U.S.C. § 300gg-22(b)(2)(D). Under the current system, moreover, a provider does not have *any* right to be heard before an administrative law judge when an IDR award remains unpaid.

**\*13** Although the statute provides that the Attorney General "shall recover the amount assessed by action in the appropriate United States district court," that federal court action is designed only to recover the civil monetary penalty owed by the health insurance company to the HHS. *Id.* § 300gg-22(b)(2)(F)(i). The procedure does not compel the health insurance company to pay the IDR award to the provider. *See PHI Health, LLC*, 2026 WL 850453, at *10 ("Nothing in the No **Surprises** **Act** authorizes HHS (or DOL or Treasury or any state agency for that matter) to order a payor that is in violation of the **Act** to comply with an IDR determination."). Indeed, it is conceivable that a health insurance company could choose to pay the civil monetary penalty but not the IDR award, because a civil monetary penalty under the NSA is $100 per day, 42 U.S.C. § 300gg-22(b)(2)(C), whereas an IDR award, like in the case of Patient M.L. here, can be many times that amount. *See* Compl., Doc. No. 1, ¶ 19 (stating that the IDR award for Patient M.L. is $97,500.00). Once a civil monetary penalty is paid, any case against a non-paying health insurance company theoretically closes until the provider refiles a complaint. When there is a significant disparity between a civil monetary penalty and an IDR award—*e.g.*, $100 per day vs. $97,500—a health insurance company has significant incentive to choose paying the former amount many times over (974 times in Patient M.L.'s case) instead of ever paying the provider. A health insurance company can therefore effectively ignore the IDR award under the NSA's administrative framework.

Cigna also highlights the considerable rulemaking authority vested in the HHS to oversee the NSA. For instance, it points out how the NSA authorizes the HHS to create an audit process to ensure that health insurance companies "are in compliance with the requirement of applying a qualifying payment amount" under the NSA. 42 U.S.C. § 300gg-111(a)(2)(A)(i)(I). That audit process, however, does not investigate whether IDR awards are being paid to out-of-network providers. *See Guardian Flight v. Aetna*, 789 F. Supp. 3d at 229 ("Nothing in § 300gg-111 suggests that these audits would evaluate health plans' and insurers' compliance with the NSA's Timing of Payment **provision** ...."). Although the NSA requires the HHS to establish a process by which providers may submit complaints—and CMS has set up a "No **Surprises** Help Desk" to accept provider complaints—it is not clear what steps, if any, CMS takes to resolve a complaint. CMS plausibly could do anything from imposing a civil monetary penalty—which I already concluded is by itself not an adequate remedy—to threatening a health insurance company with stricter **enforcement** actions. But without knowing the administrative process addressing payment of the IDR award to a provider, I cannot conclude that the NSA provides for an administrative remedy that is so comprehensive that a federal court is barred from confirming an IDR award. *See PHI Health, LLC*, 2026 WL 850453, at *10 ("[T]he limited availability of civil monetary penalties

under the No **Surprises** **Act** is not an '**enforcement** scheme,' let alone one that is 'comprehensive.' ").

To reiterate, an administrative 'remedy' that does not lead to the provider being paid is not a remedy at all. I reject a construction of the statute that bars judicial confirmation of an IDR award simply because there exists some semblance of an administrative scheme that does not ensure that the provider will be paid without the need to go to federal court. *See United States v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., concurring in part and dissenting in part) (defining the "presumption against ineffectiveness" canon as "the idea that Congress presumably does not enact useless laws").

### F. The NSA Does Not Provide a **Private** **Right** of **Action** for a Provider to Seek Damages

In addition to confirmation of the five IDR awards at issue, Agag requests an order directing Cigna to pay $142,567.99 in damages, as well as attorney's fees, interests, and costs. Compl., Doc. No. 1, at 11. For Agag to obtain damages as opposed to confirmation of the IDR award, he needs to show that the NSA created a **private** **right** of **action** for providers to sue in federal court. *See Private Right of Action, Black's Law Dictionary* (12th ed. 2024) (defining "**private** **right** of **action**" as "[a]n individual's right to sue in a personal capacity to **enforce** a legal claim"). That is because, unlike his request for confirmation, his claim for damages seeks to **enforce** substantive rights under the NSA.

 **\*14**  To determine if a statute provides a **private** **right** of **action**, a court begins "with the text and structure of" the statute. *Sandoval*, 532 U.S. at 288. Agag does not point to any section of the NSA that expressly allows for a provider to seek damages in federal court. That is because the NSA "contains no explicit **provisions**" to that effect. *See Republic of Iraq,* 768 F.3d at 170. There is therefore not an express **private** **right** of **action** that would allow providers like Agag to sue for damages under the NSA.

Even when there is not an express **private** **right** of **action**, a **private** **right** of **action** may exist impliedly if the statute displays "an intent to create not just a private right but also a private remedy." *Id*. (internal citation omitted); *but see Olmsted v. Pruco Life Ins. Co. of N.J.,* 283 F.3d 429, 432 (2d Cir. 2002) (cautioning that a court "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided"). On the

private remedy requirement, "[t]he express **provision** of one method of **enforcing** a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. I concluded earlier that the text of Section 300gg-111(c)(5)(E) (i) authorizes a provider to seek confirmation of an IDR award in federal court. For that reason, and because Agag provides no evidence that Congress intended to create a remedy other than confirmation, I conclude that the NSA does not create an implied **private** **right** of **action** that allows a provider to sue for damages under the statute.

Therefore, Cigna's Rule 12(b)(6) motion to dismiss is GRANTED with regard to Agag's request to confirm the IDR awards under Section 9 of the FAA and his request for damages under the NSA, but DENIED otherwise. Agag may seek confirmation of the IDR awards under Section 300gg-111(c)(5)(E)(i) of the NSA.

### IV. Agag's Cross-Motion to Confirm

Agag moves for an order confirming the five IDR awards at issue in this case. *See* Doc. No. 33. Although those IDR awards are already "binding" under the NSA—meaning that Cigna has an obligation to pay those amounts to Agag—Agag has no way to compel payment of those awards without obtaining a court judgment. Confirmation of an IDR award therefore matters for much the same reason as it does in the FAA context. "Armed with a court order the winning party has a variety of remedies available to **enforce** the judgment." *Florasynth Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984).

Cigna argues that Agag's Cross-Motion to Confirm should be denied because the NSA only covers "disputes over the amount of payment for certain covered services," and "Cigna's denials relate to coverage, not reimbursement." Def.'s Reply Mem. of L. in Further Supp. of Mot. to Dismiss Pl.'s Compl. and in Opp'n to Pl.'s Cross-Mots. to Confirm and for Summ. J., Doc. No. 36, at 17, 19. Put more simply, Cigna suggests that I should not confirm the five IDR awards at issue because "the services provided [by Agag] are not benefits covered under the terms of [the two patients'] health plan[s]." *Id*. at 19.

Cigna is asking me to review the IDR entities' factual and legal findings and therefore to engage in judicial review. Cigna does so even though it had earlier argued that I may not confirm an IDR award because doing so would entail judicial review. The NSA prohibits judicial review with limited exceptions. Cigna essentially argues that I may not engage in judicial review when doing so is to its detriment

(*i.e.*, confirming an unpaid IDR award) but that I should engage in judicial review when doing so is to its advantage (*i.e.*, not confirming an unpaid IDR award).

**\*15** Judicial review of an NSA IDR award is *only* permissible when a party moves to vacate an award under the grounds outlined in paragraphs (1) through (4) of Section 10(a) of the FAA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). I already concluded that I do not engage in judicial review by merely confirming an IDR award. If Cigna wants to challenge the merits of an IDR award, then it needs to move to vacate the award under Section 300gg-111(c)(5)(E)(i)(II). But Cigna has not moved to vacate the awards at issue here.[3]

In the absence of a motion to vacate, I may only deny a motion to confirm if there is evidence of "a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved." *Id*. § 300gg-111(c)(5)(E)(i)(I). Because Cigna does not provide evidence that Agag engaged in fraud or misrepresentation, Agag's Cross-Motion to Confirm is GRANTED. *See Reach Air Medical Servs. LLC, 160 F.4th at 1115* (observing the "strong legal presumption that arbitration awards will be confirmed under the FAA,"

which carries over to "the newly codified NSA, which has expressly incorporated some sections of the [FAA]").

**V. Conclusion**

For the foregoing reasons, Cigna's Motion to Dismiss, Doc. No. 25, is **GRANTED** with regard to Agag's request to confirm the IDR awards under Section 9 of the FAA and his request for damages under the NSA, but **DENIED** otherwise. Agag's Cross-Motion to Confirm, Doc. No. 33, is **GRANTED**.

The Clerk is directed to enter judgment confirming the IDR awards in the amount of $142,567.99 for Agag and against Cigna. Post-judgment interest shall accrue from the date of the entry of the judgment. The Clerk shall close this case.

SO ORDERED at Bridgeport, Connecticut this 15th day of April 2026.

**All Citations**

Slip Copy, 2026 WL 1021213

Footnotes

1    In the alternative, Cigna argues in its Rule 12(b)(6) motion that if the FAA applies, Agag is time barred from seeking confirmation of the award granted for Patient M.L. because Section 9 of the FAA "imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award[.]" Def.'s Mem. of L. in Supp. of Mot. to Dismiss Pl.'s Compl., Doc. No. 25-1, at 29-30 (quoting *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003)). I conclude in Section III(b) of this opinion that the FAA does not apply to the facts of this case, and therefore I reject Cigna's statute of limitations argument. If there is any limitations period that applies to this case, it would need to be drawn from the state or federal limitations **provision** most analogous to the NSA. Because Cigna does not suggest any alternative limitations period, I do not resolve what that period might be.

2    Although 28 U.S.C. § 1963 does not apply here by its terms, I see parallels between a request to register a foreign judgment under 28 U.S.C. § 1963 and a request to confirm an IDR award under the NSA. Even if not perfectly analogous, the two proceedings are similar in that neither involves the recognition of a new substantive right or an adjudication of the merits of a claim. When a federal court registers a foreign judgment under 28 U.S.C. § 1963, it does not look to whether a right of action exists. *See G&A Strategic Invs. I LLC v. Petroleos de Venezuela, S.A.*, 810 F. Supp. 3d 463, 467 (S.D.N.Y. 2025) ("Once registered in another district, it is as if the judgment was entered by a district court of that district ...."). Instead, a court merely ensures that it has subject matter jurisdiction before registering that foreign judgment. *See CSX Transp., Inc. v. Filco Carting Corp.*, 2011 WL 2713487, at *2 (E.D.N.Y. July 11, 2011) (explaining that 28 U.S.C. § 1963 applies once "the party seeking to **enforce** a registered judgment against a third party can establish federal jurisdiction"). Just as registration of a foreign judgment leaves untouched an earlier assessment of the merits by a separate district court, Agag's request to confirm the IDR award does not ask me to evaluate the merits of the dispute between Agag and Cigna—*i.e.*, how much Cigna should pay Agag. The merits of that dispute, like that of a separate district court judgment in the Section 1963 context, were already evaluated by the IDR entities that ruled in Agag's favor.

3    It may well be too late for Cigna to move to vacate these IDR awards. Although I do not decide the statute of limitations, I note that the most clearly analogous statute of limitations to file a motion to vacate an arbitration award is three months

from its entry. See 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.").

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.